UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| IN RE: ) | |
| ) | **1:15-mc-00355-JDL** |
| MONTREAL MAINE & ATLANTIC RAILWAY, LTD., ) | **1:15-mc-00356-JDL** |
| ) | |
| DEBTOR. ) | |

### ORDER ON MOTIONS TO TRANSFER

In July of 2013, a freight train operated by Montreal Maine & Atlantic Railway, Ltd. ("MMA"), including its 72 carloads of crude oil, derailed in the town of Lac-Mégantic, Québec, leading to a series of explosions that destroyed part of the downtown area. 1:15-mc-00356-JDL, ECF No. 1 at 2-3. Forty-seven people died. *Id.* at 3. The next month, MMA filed a chapter 11 bankruptcy proceeding in the District of Maine, and, simultaneously, sought similar protection in Canada. *Id.* The derailment also spawned civil proceedings in both Illinois and Texas state courts, which were removed to the Northern District of Illinois and the Northern District of Texas, respectively. *Id.* at 3-5. The question I must decide is whether the Illinois and Texas cases should be transferred for trial to the District of Maine pursuant to the authority granted by 28 U.S.C.A. § 157(b)(5) (2015). For the reasons explained below, I conclude that the cases should be transferred.

### I.  BACKGROUND

There are two motions before the court. First, in 1:15-mc-00355-JDL, 35 individual plaintiffs (the "Illinois Plaintiffs") move pursuant to § 157(b)(5) to transfer to this Court the personal injury tort and wrongful death cases brought against Canadian Pacific Railway Co. ("Canadian Pacific") currently pending in the United

1

States District Court for the Northern District of Illinois.[1]  1:15-mc-00355-JDL, ECF No. 1 at 1-2.  The 35 actions (hereinafter "the Illinois cases") were originally filed in the Circuit Court of Cook County, Illinois, in June 2015, and were then removed to the U.S. District Court for the Northern District of Illinois by Canadian Pacific based upon federal "related to" jurisdiction under 28 U.S.C.A. § 1334(b) (2015).  *Id.* at 6-7.  Canadian Pacific has moved to dismiss the Illinois cases for lack of personal jurisdiction, insufficient service of process, and *forum non conveniens*.  1:15-mc-00355-JDL, ECF No. 5 at 5.  The motions have not yet been briefed or heard.  *Id.* at 6.

Second, in 1:15-mc-00356-JDL, Robert J. Keach, the chapter 11 bankruptcy trustee for the debtor MMA (the "Trustee"), moves pursuant to § 157(b)(5) to transfer to this Court two putative class actions currently pending in the United States District Court for the Northern District of Texas.  1:15-mc-00356-JDL, ECF No. 1 at 1.  The two class actions (hereinafter "the Texas cases") both pertain to the derailment in Lac-Mégantic, Québec, and were originally filed in the Texas District Court of Dallas County, Texas.  *Id.* at 3-4.  They were removed to the U.S. District Court for the Northern District of Texas by Canadian Pacific based upon diversity jurisdiction pursuant to 28 U.S.C.A. §§ 1332, 1441, 1446, and 1453.  *Id.*  Both involve claims for personal injury torts and wrongful death, and include a damages request for property damage.  *Id.* at 3.  Canadian Pacific has moved to dismiss the Texas cases on the basis

---

[1] The plaintiffs allege that Canadian Pacific participated in the rail shipment of the oil that ultimately exploded in Lac-Mégantic, Québec, in tank cars which, plaintiffs contend, "were not supposed to be used for such volatile oil." 1:15-mc-00355-JDL, ECF No. 1 at 4-5 n.3.

2

of lack of personal jurisdiction, insufficiency of service of process, and *forum non conveniens*. 1:15-mc-00356-JDL, ECF No. 9 at 4. The motions have been briefed, but have not been heard or decided. *Id*. at 4-5.

The Illinois plaintiffs, the Trustee, and Canadian Pacific agree that this Court has subject-matter jurisdiction over the Illinois and Texas claims because they are "related to" the MMA bankruptcy which is subject to title 11 of the United States Code. *See* 28 U.S.C.A. § 1334(b) ("[T]he district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.").

## II. LEGAL ANALYSIS

The transfer motions and Canadian Pacific's opposition to them center on whether this Court may and should transfer the Illinois and Texas cases to the District of Maine under the authority of § 157(b)(5), which states:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

28 U.S.C.A. § 157(b)(5).

The statute's purpose is to "centralize the administration of the [bankruptcy] estate and to eliminate the 'multiplicity of forums for the adjudication of parts of a bankruptcy case.'" *A.H. Robins, Co., Inc. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) (quoting House Conference Report on H.R. 5174, 130 Cong. Rec. H7492 (1984), *as reprinted in* 1984 U.S.C.C.A.N. 576, 579 (statement of Rep. Kastenmeier, Member, H. Comm. on the Judiciary)). This provision "empowers a court other than that in

which the litigation is pending to decide where the trial is to take place." 1-3 Collier on Bankruptcy P 3.06[3] (16th ed. 2010). "Courts confronted with motions to set venue under section 157(b)(5) have weighed the impact that claim centralization might have on the bankruptcy estate against the convenience to the parties and witnesses and the availability of evidence." *In re New England Compounding Pharm., Inc. Prods. Liab. Litig.*, 1:13-md-02419-RWZ, at 17 (D. Mass. Oct. 7, 2015) (citing *A.H. Robins*, 788 F.2d at 1014 (approving the district court's order provisionally consolidating personal injury claims against a bankrupt manufacturer in the bankruptcy district)); *In re Dow Corning Corp.*, 86 F.3d 482, 497 (6th Cir. 1996) (agreeing with the Fourth Circuit in *A.H. Robins* that § 157(b)(5) "should be read to allow a district court to fix venue for cases pending against nondebtor defendants which are 'related to' a debtor's bankruptcy proceedings pursuant to section 1334(b)").

To address whether transfer is appropriate in these cases, I address the effect that the centralization of the Illinois and Texas proceedings in this District will have on (A) the bankruptcy estate; and (B) the convenience to the parties and witnesses, and the availability of evidence; as well as (C) additional arguments raised by Canadian Pacific in opposition.

**A.      The Effect of Claim Centralization on the Bankruptcy Estate**

The Order of the Bankruptcy Court confirming the Trustee's plan of liquidation contains a "proportionate judgment reduction" provision under which Canadian Pacific's liability for the Lac-Mégantic disaster, if any, may be reduced by the comparative fault of MMA, which operated the train. 1:15-mc-00356-JDL, ECF No.

1 at 7; ECF No. 15 at 5. It necessarily follows that although MMA is not a named party in the Illinois and Texas cases, the bankruptcy estate will be involved in the litigation of those cases. Accordingly, the estate will be diminished by the substantial costs that litigation of numerous cases in two forums—Illinois and Texas—would likely entail. Canadian Pacific has not disputed that the administration of the bankruptcy estate and the preservation of its assets will benefit from the centralization of the Illinois and Texas cases in a single judicial forum, and there is nothing in the record to suggest otherwise.

**B.   Convenience to the Parties and Witnesses, and the Availability of Evidence**

Canadian Pacific asserts that "[t]he situs of the derailment and the location of witnesses make Canada, not Texas or Maine, the appropriate forum," 1:15-mc-00356-JDL, ECF No. 9 at 4, and it has sought the dismissal of the Illinois and Texas cases on the basis that both jurisdictions lack personal jurisdiction over it and are inconvenient forums, *id.* at 4, 5; 1:15-mc-00355-JDL, ECF No. 5 at 5. But the question of whether the claims presented in the Illinois and Texas cases should be decided in a Canadian forum versus an American forum or forums is not raised by the transfer motions. That question will be addressed only after the transfer motions have been decided, and Canadian Pacific's motion to dismiss has been heard.

At this stage of these proceedings, the evaluation of the convenience of the parties and witnesses, and the availability of evidence, relates to the three American forums at issue—the Northern District of Illinois, the Northern District of Texas, and the District of Maine. Of these, the District of Maine is geographically closest to the

5

locus of the train derailment. All or almost all of the individual plaintiffs in the Illinois cases, and the members of the putative classes in the Texas cases, are (as described by Canadian Pacific at the hearing held on January 20, 2016 regarding the transfer motion) Canadian, French-speaking citizens.[2] Transcript of Oral Argument at 56. Moreover, Canadian Pacific has not identified any specific prejudice that will befall it if the motions to dismiss pending in the Illinois and Texas cases and, by implication, the actions themselves, are heard in Maine and, if necessary, the cases are subsequently tried in Maine. *Id.* Accordingly, I conclude that the transfer of the Illinois and Texas cases to the District of Maine will promote the convenience of the parties and witnesses and will enhance the availability of evidence.

### C.   Canadian Pacific's Additional Arguments in Opposition to Claim Centralization

Canadian Pacific presents five specific arguments in opposing the transfer motions.

### 1. Property Damage Claims

Canadian Pacific notes that the complaints in the Texas cases include requests for property damages and argues that because property damages are outside the scope of "personal injury tort and wrongful death claims" subject to transfer under § 157(b)(5), the Texas cases are not subject to transfer in their entirety. 1:15-mc-00356-JDL, ECF No. 9 at 7. Consequently, Canadian Pacific argues that the prospect of a

---

[2] Canadian Pacific is headquartered in and has a principal place of business in Alberta, Canada. Transcript of Oral Argument at 52.

transfer of only a portion of the Texas cases should be a basis for the court to deny the transfer request. *Id*.

The Trustee and the Illinois plaintiffs respond that the property damages requested in the Texas complaints are addressed by the "Plan of Compromise and Arrangement pursuant to the Companies' Creditors Arrangement Act concerning, affecting and involving Montreal, Maine & Atlantic Canada Co.," dated March 31, 2015 (the "Canadian Plan"). 1:15-mc-00356-JDL, ECF No. 38 at 1-2 (citing 1:15-mc-00356-JDL, ECF No. 39-1, Ex. A). They also represent that "the Texas Plaintiffs are prepared to accept the payments under the Canadian Plan as payment 'in full and final satisfaction' of their requests for an award of damages for property loss and damage" averred in the complaints. 1:15-mc-00356-JDL, ECF No. 39 at 3; *see also* 1:15-mc-00356-JDL, ECF No. 38 at 3. Further, they represent that if the Texas cases are transferred to the District of Maine, the Texas plaintiffs "are prepared to seek leave from this Court so that they may amend their pleadings accordingly[.]" 1:15-mc-00356-JDL, ECF No. 41 at 2.

Based on the representations made by the Illinois plaintiffs and the Trustee, the requests for property damages included in the Texas complaints are not a bar to a transfer of those cases to this District. As a requirement of the transfer, the Texas plaintiffs will be required to forthwith amend their complaints pursuant to Federal Rule of Civil Procedure 15 following the transfer so as to dismiss their requests for property damages.[3]

---

[3] Canadian Pacific argues that the Texas plaintiffs should be required to take the additional step of dismissing their requests for property damages with prejudice. 1:15-mc-00356-JDL, ECF No. 40 at 2.

7

**2. Timing**

Canadian Pacific contends that "[b]oth transfer motions are premature because no case is trial ready—to the contrary, only pre-answer motions have been filed, and no such request has been resolved." 1:15-mc-00356-JDL, ECF No. 9 at 9. However, this argument hinges on an overly narrow interpretation of the phrase "shall be tried" contained in § 157(b)(5), because it assumes that transfer is only proper when a personal injury or wrongful death lawsuit is ready for trial. *Id.* at 8-9 (quoting § 157(b)(5) ("The district court shall order that personal injury tort and wrongful death claims *shall be tried* in [one of two venues]." (emphasis added))). The three decisions cited by Canadian Pacific do not support such a narrow interpretation of § 157(b)(5). *See In re Smith,* 389 B.R. 902, 911 (Bankr. D. Nev. 2008) (determining that § 157(b)(5) does not divest the Bankruptcy Court of jurisdiction to decide a lift-stay motion regarding an underlying libel claim); *In re G-I Holdings, Inc.*, 323 B.R. 583, 614-15 (Bankr. D. N.J. 2005) (concluding that § 157(b)(5) does not bar the Bankruptcy Court from determining objections to asbestos claims); *In re Johns Manville Corp.,* 1984 WL 1035, at *1 (S.D.N.Y. Sept. 4, 1984) (concluding that the claimant's transfer motion pursuant to § 157(b)(5) was premature until the proposed alternative claims resolution procedures had been finalized and rejected by the individual asbestos claimants).

---

Because the anticipated amendments to the complaints relate to the requested relief, and not to the claims themselves, there is no apparent reason to require a dismissal with prejudice. However, if Canadian Pacific wishes to press the point further, it will have the opportunity to file a motion seeking relief pursuant to Federal Rule of Civil Procedure 12(b) in response to the amended complaints.

The constricted reading of § 157(b)(5) proposed by Canadian Pacific would stymie the statute's purpose of centralizing the administration of bankruptcy estates and eliminating multiple forums for the adjudication of related cases. *See A.H. Robins,* 788 F.2d at 1011. It would also impede the court's exercise of "related to" jurisdiction, which serves to permit bankruptcy courts to "deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards,* 514 U.S. 300, 308 (1995) (citations omitted). Indeed, this Court has already sought to accomplish that objective in this case by ordering, pursuant to § 157(b)(5), the transfer of the first round of Illinois cases filed against Canadian Pacific to the District of Maine soon after the cases were filed and long before they were ready to be tried. *See In re Montreal Maine & Atlantic Railway, Ltd.,* 1:14-mc-184-NT, ECF No. 100 (D. Me. Mar. 21, 2014).

The purpose of claim centralization pursuant to § 157(b)(5) is not limited to establishing the venue in which an actual trial will take place. Rather, it establishes venue for all proceedings related to a trial, including the pretrial management of the case. Thus, although the Illinois and Texas cases may not be ready for trial, their lack of trial readiness does not prevent their transfer to this District pursuant to § 157(b)(5).

### 3. Forum Manipulation

Canadian Pacific next contends that transfer should be denied because the Illinois plaintiffs' ultimate objective is to ask this court to abstain and to order the return of the cases to Illinois state court for trial. 1:15-mc-00356-JDL, ECF No. 9 at

9

11. Thus, Canadian Pacific argues, the Illinois plaintiffs, "in cahoots with the trustee, seek a friendly forum for their claims, rather than preservation of the bankruptcy estate." *Id.* In support of its argument, Canadian Pacific relies on the conclusion reached in *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 834 (5th Cir. 1993), "that § 157(b)(5) was intended to confer new power upon the district court in which a bankruptcy is pending to qualify the choice of venue made by a plaintiff, and was not enacted to vest the power of choice in the plaintiff." *Id.* (internal quotation omitted).

The issue addressed in *Baumgart* was whether § 157(b) prohibits the district court from dismissing, on the basis of *forum non conveniens*, a bankruptcy-related wrongful death action that arose in Germany. *Id.* at 828. The Court upheld the dismissal concluding that § 157(b)(5) does not abrogate the doctrine of *forum non conveniens*. *Id.* at 834, 837. "An enactment conferring upon the district court additional power to control venue cannot properly be construed to deprive the courts of their established discretionary powers over venue." *Id.* at 834.

*Baumgart* is instructive here because the transfer of the Illinois and Texas cases to this District pursuant to § 157(b)(5) will not deprive this Court of its separate authority to decide venue questions, *see id.* at 834-35. Accordingly, the possibility that the Illinois plaintiffs and/or the Trustee may, if their transfer motions are successful, ultimately move for a change of venue for reasons unrelated to § 157(b)(5) is not a reason to deny their transfer requests.

### 4. Abstention

Canadian Pacific also argues that I should abstain from transferring the two Texas class actions and permit them to remain for decision in the Northern District of Texas based on 28 U.S.C.A. § 1334(c)(1). *See* 1:15-mc-00356-JDL, ECF No. 9 at 15-17. Section 1334(c)(1) recognizes that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." Canadian Pacific contends that because there is federal jurisdiction over both cases based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C.A. § 1332(d)(2), the District of Maine "need not exercise 'related-to' jurisdiction for [the Texas cases] to remain in federal court." *Id.* at 15-16.

Section 1334 serves to make judicial abstention doctrines applicable in bankruptcy proceedings and, in particular, to transfers under § 157(b)(5). *See In re Twin Labs, Inc.*, 300 B.R. 836, 840 (S.D.N.Y. 2003) *(citing In re Pan Am. Corp.*, 950 F.2d 839, 845 (2d Cir. 1991)). The provision thus codifies the principles set forth by the Supreme Court in *Thompson v. Magnolia Petroleum Co.,* 309 U.S. 478 (1940), which recognize that difficult or unanswered questions of state law should be deferred to state forums. *In re Pan Am. Corp.,* 950 F.2d at 845. However, "[w]hen the applicable substantive law is federal, abstention is disfavored." *Id.* at 847 (quoting *De Cisneros v. Younger,* 871 F.2d 305, 308 (2d Cir. 1989)). Furthermore, "the presence of a federal basis for jurisdiction may raise the level of justification needed for

11

abstention[.]" *Id.* (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 815 n.21 (1976)). "This rationale applies with even greater force in the bankruptcy context[.]" *Id.*

In requesting abstention so that the Texas cases, which originated in Texas state court, would be decided in the U.S. District Court for the Northern District of Texas, Canadian Pacific is not asking this Court to abstain in favor of the authority of a state court. *See* 1:15-mc-00356-JDL, ECF No. 9. Neither has Canadian Pacific suggested that there are any significant questions of Texas state law involved. *See id.* Given that the existence of both CAFA jurisdiction pursuant to § 1332(d)(2) and "related to" subject-matter jurisdiction pursuant to § 1334(c)(1) support the exercise of federal jurisdiction in both the Northern District of Texas and the District of Maine. I conclude that there is no basis for abstention as between these two federal forums. Under these circumstances, abstention is not warranted.

**5. Deferral of Transfer**

Canadian Pacific contends that even if a transfer pursuant to § 157(b)(5) is ordered, the transfer should be deferred so as to permit the Illinois and Texas courts to rule on the pending motions to dismiss. *Id.* at 17. This, Canadian Pacific contends, will "minimize confusion and promote expediency and efficiency." *Id.*

The Illinois and Texas cases arise out of the same operative facts and generally involve the same parties and issues. All of the cases present the same critical question which will be addressed after the transfer motions are resolved: Whether, as Canadian Pacific asserts, the plaintiffs' claims should be venued in a Canadian

forum because the train derailment took place in Canada? Thus, the transfer of the cases to the District of Maine pursuant to § 157(b)(5) will permit a single judge to address the questions of law that are common to these cases. This will avoid the possibility of conflicting decisions by separate courts and separate appeals from those decisions. Contrary to Canadian Pacific's argument, expediency and efficiency will be promoted by a § 157(b)(5) transfer to this District and the management of these cases by a single judge.

### III. ORDER

**It is ordered that:**

1. The motions to transfer, 1:15-mc-00355-JDL, ECF No. 1, and 1:15-mc-00356-JDL, ECF No. 1, are **GRANTED**. The Clerk of Court is directed to provide a copy of this order—to effectuate the transfer of the Illinois case, 1:15-cv-08751, and the Texas cases, 3:15-cv-2673-C and 3:15-cv-3032-B, to the District of Maine.

2. The plaintiffs in the Texas cases shall file the amended complaints within 14 days of the docket entry in ECF reflecting the completion of the transfer of the Texas cases to the District of Maine.

**SO ORDERED.**

Dated: February 22, 2016

                                                                           **/s/ Jon D. Levy**
                                                                          **U.S. DISTRICT JUDGE**